# COMMON PLEAS OF LACKAWANNA CO.

DEL., LACK. & WESTERN R. R. CO. VS. ATEN, COLLECTOR.

## IN EQUITY.

### RULE TO DISSOLVE PRELIMINARY INJUNCTION.

FIRST—The Act of 1878, providing for the creation of new counties in this Commonwealth, failed to provide for the collection of taxes assessed and levied in any one year, when a new county is created. The County of Lackawanna was established under this Act on the 21st day of August, 1878. Prior to that date, however, Luzerne County, out of whose territory Lackawanna was created, had assessed and levied on the plaintiffs' property for county purpose.

HELD: That notwithstanding the Act of 1878 failed to apportion said taxes between the new and the old counties, the plaintiffs must pay their taxes to the County of Luzerne.

SECOND—The liability of the plaintiffs was fixed for the payment of this tax the moment the assessment was made, and the duplicate placed in the hands of the collector.

THIRD—Whether the taxpayers and inhabitants of the City of Scranton are liable for the payment of taxes to Luzerne County, not decided.

This case grows cut of an attempt on the part of the defendant, a collector of taxes for Luzerne County, to compel payment of such taxes from the plaintiffs within the County of Lackawanna. A preliminary injunction was granted at the instance of the plaintiffs to restrain the defendant from collecting said taxes.

Hon. H. B. Payne and Geo. B. Kulp, Esq., for the Rule.

1st. The assessment upon which the tax in question was founded being made, the tax levied, duplicate made out, collectors appointed, bond given and approved before the law under which Lackawanna County was finally organized was passed, the right to collect the tax was not effected by the organization of the new county.

2nd. Notice of amount of tax and demand for payment being made by the collector in June, the plaintiff became liable to process for collection in thirty days thereafter; not paying, the company were in default before the county was organized and hence not entitled to equity.

3rd. The collector became personally liable to the County of Luzerne for the tax in question and the plain- tiffs personally liable to the collector. The collector was not such an officer of Luzerne County as was effected by the new law. He was an officer under the laws of the State from the time his bond was approved and duplicate placed in his hands.

4th. Taxes under the law were collected after division. (Cumberland Co. vs. McClintock, 9 W. & S. 80.)

5th. This is not a question between the municipalities of Lackawanna and Luzerne, but of an individual at— tempting to avoid payment of his just share of taxation by reason of his own default.

6th. Lackawanna is liable for its share of indebted— ness of the old county. If this injunction is sustained, then the indebtedness of Luzerne will be increased and those citizens of Lackawanna county who have already paid their taxes for 1878, will again have to pay their share of the indebtedness caused by those now resisting payment of their taxes, and injustice will be done those who have paid in Lackawanna county promptly accor— ding to law.

7th. There is nothing in the law under which Lacka— wanna county was finally organized, from which it can be presumed that the collection of the taxes already le— vied should not be collected.

8th. If this injunction is sustained then all who have been negligent and are in default will escape paying any tax for state or county purposes for 1878. There being no tax levied in Lackawanna for that year.

9th. Persons liable at the commencement of the year when assessment is made are liable for the year. Shaw vs. Quinn, 12 S. & R. 299.

MESSRS. HAND & POST, *Contra.*

1st. By the very creation of the new county all powers and privileges of the officers of the old county, within the limits of the new county, were annihilated, unless saved by the act under which the new county was created.

(*a.*) This is assumed in all acts passed heretofore erect-

ing new counties from the year 1800 down. Beginning with Centre County, we find the Acts of Assembly provide expressly that the taxes " *laid and to be laid during the year of the erection of the new county, are to be collected as if the act had not passed.*" So uniformly is this inserted in every act that the exception, if found, would only prove the rule. After such a uniform practice, assuming, as we claim, that if the legislature had not so provided the law would be otherwise, we refer to the legislative language in the case of Montour County as still more confirmatory of our position. P. L. 1850, p. 658.

The language is "All taxes shall be assessed and collected as heretofore done until the first day of November next, *after which the County of Montour shall be considered organized.*"

(*b.*) The decisions of the courts assume that the creation of a new county destroys the power of all county officers of the old county within the new.

Respublica vs. M'Clean, 4 Yeates, 399, where the commission of all justices were wiped out by the erection of the new county. Judge Breckenridge says, " Can the commissioners, treasurer, coroner, sheriff, &c., of the old county continue to act within the new? Not unless their authority is specially saved in the act of incorporation of the new."

See also King vs. Carte, 1 Barr, 147. Brown's appeal, 2 Jones, 333. Devor vs. M'Clintock, 9 W. & S. 80, cited by the defendants, we think, is in our favor. Here the taxes were past due on unseated land in the old county before the new county was erected, yet it holds that the old county must pay taxes to the new subsequently as any individual. And Judge Gibson says, " a county is not even a quasi sovereign in matter beyond its confines."

2d. The act of 1878, under which the new county was erected by its provisions, precludes the right to collect taxes by the old county.

(*a.*) The new county is to have, immediately after its erection, all the rights, powers and privileges of other counties of this commonwealth.

(*b.*) New officers are to be appointed, having the powers of like officers of the other counties.

(*c.*) After the courts are organized the power of all county officers of Luzerne shall cease.

(*d.*) The 13th section provides for a settlement of the debt of the old county and payment of its *pro rata* share by the new.

Now it seems to be settled " by general principles of law, if a county is divided by setting off a part, or forming a new county, the remaining part retains all its property rights and privileges, and remains subject to all its obligations and duties, unless some express provision to the contrary should be made by the act authorizing the separation. And when this is done, a subsequent statute requiring the latter to bear part of the burdens of the new county, cannot in general have any binding force, for it attempts to take away their vested rights." Abbott's Digest on corporations, page 255, and cases there cited.

The above being true, it is pre-eminently right that if we surrender everything except our share of the debt of Luzerne, that Luzerne should take nothing from Lackawanna for a day after the latter is erected. Lastly a complete provision is made in adjusting the matter between the two counties which renders any further collection of taxes by Luzerne unnecessary and improper.

Opinion by HANDLEY, J., filed January 28th, 1879.

The plaintiffs here say, that they are a corporation of the Commonwealth of Pennsylvania, and owners of property in the township of "Old Forge," within the county of Lackawanna; that the county of Lackawanna was created on the 21st day of August, 1878, out of a part of Luzerne county, with all the rights and privileges of other counties of this Commonwealth, in pursuance of an act of Assembly approved 17th of April, 1878, providing for a division of counties of this Commonwealth, and the erection of new counties therefrom, which act they pray may be taken as part of this bill as if fully set forth; that since the erection of said new county the said defendant has been appointed tax collector for county taxes by the

commissioners of Luzerne county, and has received a du-
plicate of county taxes for the year 1878 for the county of
Luzerne, as they are informed and believe, and is seeking
to collect said taxes assessed upon property in the town-
ship of Old Forge, in the county of Lackawanna, belong-
ing to them, out of their property, and has distrained by
warrant of distress the personal property of the said com-
pany in said township within Lackawanna county for the
payment of a county tax for county of Luzerne, for the
year 1878, and said property is advertised for sale on Sa-
turday next, the 14th day of December, 1878. That the
plaintiffs further allege upon information and belief, that
since the erection of Lackawanna county, they are not
liable for any taxes to the county of Luzerne, not levied
and collected before the erection of said county of Lacka-
wanna, and that the commissioners of Luzerne county
have no power to appoint a collector of taxes within the
county of Lackawanna for the county of Luzerne, and
that any liability for taxes to the county of Luzerne for
1878, if there be any, must be enforced against the proper-
ty of these plaintiffs through the proper officers of Lacka-
wanna county, after the same has been adjusted by virtue
of the Act of Assembly aforesaid, by the commissioners
of the two counties; that they are desirous of paying their
county tax legally assessed for the year 1878, to the pro-
per persons, but are informed and believe they should pay
them to the officers appointed by the commissioners of
Lackawanna county, and upon duplicate issued by them
after the adjustment aforesaid, and they bring this suit as
well for themselves as for others similarly situated; that
they believe irreparable injury will be done by the sale of
their property, and that a great multiplicity of suits will
ensue if they are not relieved by the Court.

The plaintiffs, therefore, pray that an injunction may
be granted restraining the defendant from selling the pro-
perty of the plaintiffs, now distrained, and from proceed-
ing further for the collection of the said county tax assess-
ed and levied by the commissioners of Luzerne county
for the year 1878, and for such other and further relief as
to the Court may seem meet.

Preliminary injunction was allowed, and at the same time a rule to show why the same should not be dissolved. At the coming in of the rule, counsel for the commissioners of Luzerne county, and for Mr. Aten, collector, filed affidavits by way of answer.

The Luzerne county Commissioners say, in their affidavits, that they are commissioners of Luzerne; that the assessment for the township of Old Forge, was returned and completed on the 29th day of January, 1878; that Charles Aten was appointed collector of taxes for the year 1878 on the 2nd day of April, 1878, which was before the act of Assembly creating new counties was passed; that the county of Lackawanna has no interest whatever in the taxes assessed and levied for the year 1878 in the township of Old Forge; that the taxes contained in the duplicate of Charles Aten, collector of the township aforesaid for the year aforesaid, was wholly due to the county of Luzerne before the erection of the county of Lackawanna.

Collector Aten in his affidavit says, that the first and second sections of the complainants' bill are true; but it is not true that since the erection of Lackawanna county he was appointed: that he was appointed collector, on the 2nd day of April, 1878, of the tax complained of by the plaintiff; that he is liable to the county of Luzerne for the whole amount of the duplicate of county taxes for the year 1878, so delivered to him by the commissioners of the county of Luzerne, and has given bond with sureties for payment of the same to the Treasurer of Luzerne county; that the county of Lackawanna has an interest in the taxes so assessed and levied. It was agreed between counsel that there is no county tax levied for the year 1878 for Lackawanna county; also, that Mr. Aten, collector, served notice according to law on the company in June, 1878, for the payment of the taxes due by the plaintiffs.

The question presented for our decision in this case, is new and one of importance. It cannot be denied but that the law making power has the right to designate in what manner, and in what proportion, taxes assessed and levied, but not collected, may be collected,

after' the erection of a new county out of the territory of another county. Section 9. P. L. 1878, p. 19, of the act, provides, that in case a majority of the votes cast * * * shall be in favor of the creation of the new county, "the Governor shall forthwith issue a proclamation declaring the same, and thenceforth said new county shall be established, with all the rights, powers and privileges of other counties." The Governor issued his proclamation on the 21st day of August, 1878, setting forth that Lackawanna county was erected with all the rights and privileges of other counties." Hence according to these dates, the tax in question was assessed and levied long before the erection of the county of Lackawanna. ' Whilst several important questions were presented by the counsel who argued this case, yet we will confine our examination to the single question, namely— whether the county of Luzerne may collect taxes assessed and levied in 1878, according to law, before the creation of the new county ? We prefer to confine ourselves to this single question, because we have now before us a case where several important questions growing out of the attempt of the collector of taxes for the county of Luzerne to collect taxes for the years 1877 and 1878 in the city of Scranton, situated in the county of Lackawanna. The county commissioners are authorized by law to appoint collectors of county rates and levies whereupon the commissioners shall issue their warrants and duplicates to such collectors, therein authorizing and requiring them to demand and receive from every person in such duplicate named the sum wherewith such person stands charged. Hilbish vs. Hower; 58 Penn. St. R. 93. If any person shall neglect, or refuse to make payment of the amount due by law for such tax within thirty days from the time of demand made, it shall be the duty of the collector to levy such amount by distress * * * * and in case goods and chattels * * * * cannot be found, such collector shall be authorized to take the body of such delinquent, and convey him to the jail of the proper county, there to remain until such tax shall be paid or secured to be paid. The law then provides how the commissoners

may within three months from the delivery of the dupli-
cate to the collector, file a certificate under their hands
and seals in the office of the Prothonotary, stating the
amount due and unpaid by such collector. It also pro-
vides, when the collector neglects or refuses to pay the
county treasurer within the time fixed by law all moneys
which shall be due on his duplicate, that the Treasurer
may issue his warrant, and take the body of such col-
lector . 2. Purd. Dig., p. 1374-5, §§ 88—53. It will
thus be seen that the county commissioners, as well as the
county treasurer and collectors, have important duties
to perform within a prescribed period of time and
are under obligations to perform official duty,
which if neglected carries with it severe pen-,
alties. In this case the assessment was made on
the plaintiffs' property, the rate fixed, the collector
appointed, the warrant and duplicate issued, long before
the creation of Lackawanna county. As was said by Gib-
son, C. J., in the case of Devon vs. M'Clintock 9, W. &
S. 81, it is certain the present case has not been provided
for by the letter of the enactment, but it is decisively
within the spirit and meaning of it. In point of reason,
it is indifferent which county has assessed the tax, as
the land must bear its burthen somewhere. The taxes .
here were clearly assessed and charged for the use of
Luzerne county, and had they been paid over to the col-
lector, they must certainly have gone into the treasury of
Luzerne. Lackawanna had no existence when these taxes
became a charge; Barnett vs. Jefferson county 9 Watts
167. In the case of Waldron vs. Lee, 5 Pick 323, it was
held that if after a tax has been raised and assessed on the
inhabitants of a school district, part of the district is set.
off into another district, the inhabitants of such part re-
main liable to pay the tax, the debt being fixed by the
assessment. When the assessment is made, each indi-
vidual becomes indebted for the part or proportion which
is assigned to him. He cannot be discharged from the
debt, but by payment, or by abatement, according to the
provisions of law. Wherever he goes the debt will follow
him, and he may be pursued by the collector with his

warrant into any other part of the Commonwealth. In the case of Hartman vs. Marlborough 9 Cushing 525, where, by an Act of the Legislature, passed on the 14th day of May, 1851, part of the town of Marlborough with the inhabitants thereon, should be annexed to the town of Monterey, the Act taking effect on its passage, the plaintiff was called upon to pay and did pay a tax assessed on him the same year, as an inhabitant of Monterey. It was held that the plaintiff was beyond all doubt an inhabitant of Marlborough and was lawfully assessed there. His legal obligation was fixed, and the tax he paid to the town of Monterey for the same year was levied unlawfully, and paid by him in his own wrong and cannot operate to divert the right of the town of Marlborough. Nor can the fact that the assessment in Marlborough was not in form completed, nor the tax bill signed, until June, affect the question. Wheresoever the books of the assessors were completed, or the tax-bill signed and delivered, it was, in law, a tax assessed on the first day of May See Cooley on Taxation. 177, and cases there cited. The act of 1878, P. L. p. 17, creating new counties in this Commonwealth, is silent about taxes · levied and to be collected, while in about every other act of the General Assembly, creating the several counties carved out of the mother counties, we find provision is made for the collection and payment of taxes levied, or to be levied, but not collected. The 16th section, P. L. 1878, p. 20, provides, "That the property and taxable inhabitants of all the territory of the new county, after its erection, shall continue liable for the payment of and shall pay its share of any debts of the county from which such portion of territory was taken, existing at the time of the erection, of such new county, in proportion to the valuation of its taxable property and number of taxable inhabitants; and the same shall be adjusted by the commissioners of the two counties within a year after the creation of the new county, and in the event of any question arising between said commissioners in regard to said adjustment about which said commissioners are unable to agree, said ques-

tion shall be, upon the demand of the commissioners of either county, referred to and adjusted by two of the Judges of the Courts of Common Pleas, of the two counties, longest in commission, in such way as they may deem best, and the amount of indebtedness so adjusted and found due, if any, to the old county, shall be paid by the new county to the old by bonds issued therefor, or by a tax for that purpose to be levied, assessed and collected in such territory after the erection of such new county, the whole debt so adjustec to be paid within ten years after the erection of said new county."

We must take this section, of the act providing for the erection of new counties, as a legislative mode by which the whole question of all taxation, and other matters connected therewith, can be adjusted. This section is plain. If the tax assessed and levied for the year 1878 against the inhabitants of the territory now forming Lackawanna County, cannot be collected, or if the inhabitants can in any possible manner escape the payment thereof, then the debt of Luzerne is increased, and the whole "property and taxable inhabitants" of the new county becomes liable to Luzerne for this portion of this tax debt. Hence, if the people or inhabitants of the city of Scranton, are not liable under the law creating the city, for the payment of county taxes, then every inhabitant and tax payer of the city will, under the new county act, have to contribute either by the payment of such tax debt, in bonds, or be burdened with additional taxation for the period of the next ten years. The taxable inhabitants of Lackawanna county, who are liable to county taxes, outside of the city of Scranton, better render unto Cæsar the things which are Cæsar's than to trust to the dark future for deliverance. We, of course, while disposing of this question, point out no method by which this tax may be collected by the officers of Luzerne county; we only decide that such tax may be collected. Courts of equity ought not, except upon the clearest grounds, interfere with the speedy collection of public taxes: Dodd vs. Hartford 25, Conn. 239. It is to be regretted that the framers of the law under which Lackawanna county was erected, failed to provide for at least an apportionment of the taxes levied and to be collected, in any one year when a new county is to be erected.

Rule absolute.